**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF KANSAS**

| | |
|---|---|
| **LESLIE J. REYNARD** | ) |
| | ) |
| *Plaintiff,* | ) |
| | )     **Case No. 19-CV-4012-HLT-TJJ** |
| | ) |
| **v.** | ) |
| | ) |
| **WASHBURN UNIVERSITY OF** | ) |
| **TOPEKA** | ) |
| | ) |
| *Defendant.* | ) |
| | ) |

## DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR PROTECTIVE ORDER AND TO QUASH DOCUMENT REQUEST (DOC. 60)

Defendant Washburn University of Topeka ("Washburn"), through counsel Timothy A. Shultz and Whitney L. Casement, files this Response to Plaintiff's Motion for Protective Order and to Quash Document Request (Doc. 60). For the following reasons, this Court should deny Plaintiff's Motion for Protective Order and to Quash Document Request.

### NATURE OF THE CASE AND MATTER BEFORE THE COURT

This is an employment discrimination and retaliation lawsuit in which Leslie Reynard, a tenured professor at Washburn University in the Communications Department, alleges various actions spanning from 2007 to 2019 which she claims were discriminatory and retaliatory. The current disputes involve her objection to completing her deposition in person due to Covid-19 concerns, and objections to Defendant's *duces tecum* part of the deposition notice.

### ARGUMENTS AND AUTHORITIES

**I.      This Court should deny Plaintiff's Motion for Protective Order.**

Plaintiff is refusing to appear in person for her deposition, despite the varied precautions in place or offered to protect all attending the deposition. Yet, Plaintiff has failed to establish good

cause for a protective order requiring that her deposition be conducted via video. The Federal Rules of Civil Procedure and associated case law make it clear that the Court has discretion to require Plaintiff to complete her deposition in person.

> Federal Rule of Civil Procedure 26(c) states the court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense. "The court has broad discretion to decide when a protective order is appropriate and what degree of protection is required." Federal Rule of Civil Procedure 30(b)(4) provides that the parties may stipulate, or the court may order, that a deposition be taken by telephone or other remote means. But, Rule 30(b)(4) is permissive, not mandatory, and the Court must exercise its discretion in determining whether the moving party has shown **good cause** for issuance of a protective order requiring that a deposition be taken remotely.

*Manley v. Bellendar*, 18-cv-1220-EFM-TJJ, 2020 WL 2766508, at *2 (D. Kan. May 28, 2020)(emphasis added). "With respect to the deposition of a plaintiff, the **general rule** that has developed is that '*a plaintiff will be required to make himself or herself available for examination in the district in which the suit was brought*'." *Shockey v. Huhtamaki, Inc.,* 280 F.R.D. 598 (D. Kan. 2012)(citations omitted)(emphasis added). "This rule is based on the rationale that the plaintiff has selected the forum and should not be heard to complain about having to appear there for a deposition." *Id.*

Plaintiff argues that she is at a higher risk for severe illness from Covid-19 due to her age and various health conditions, which she suggests compromise her immune system. While Defendant certainly wants to be considerate of both Plaintiff's concerns and her medical condition, Plaintiff does not explain why the accommodations offered by Defendant do not provide her with adequate protection from contracting Covid-19 if she appeared in person at the deposition. Defendant asserts that Plaintiff's Motion for Protective Order should be denied, because (1) conducting Plaintiff's video by deposition is impossible due to the large volume of documents that will need to be used in Plaintiff's deposition; (2) Defendant has offered reasonable protections and

accommodations to alleviate Covid-19 transmission concerns; and (3) Plaintiff would not be burdened by travelling to Topeka to conduct the deposition in person.

Plaintiff also argues in her Motion for Protective Order that the *duces tecum* is "too broad and presents an undue burden for Plaintiff." Yet, Plaintiff did not make a good faith effort to confer regarding the *duces tecum*, as required by the Rules of Civil Procedure. Had Plaintiff's counsel conferred with Defendant's counsel regarding the *duces tecum*, Plaintiff would have known that Defendant was prepared to and herein does offer an appropriate compromise that addresses Plaintiff's concerns with the *duces tecum*. In light of Plaintiff's failure to confer regarding the discovery dispute concerning the *duces tecum* and in light of Defendant's compromise offered herein, Plaintiff's Motion to Quash the deposition notice *duces tecum* should be denied.

### a. Requiring Defendant to conduct Plaintiff's deposition via video places Defendant at an unfair disadvantage.

Requiring defense counsel to complete Plaintiff's deposition via video would place Defendant at an extreme disadvantage. The biggest disadvantage relates to the significant number of documents which defense counsel must present to Plaintiff and ask Plaintiff questions about during the deposition. This large volume of documents makes a video deposition unworkable. Defendant has served over 1700 pages of documents to Plaintiff; and Plaintiff has served 1650 pages of documents to Defendant. Since this case is about Plaintiff's years of employment at Washburn University, there are reams of documents that include personal emails to or from Plaintiff which will be a part of Plaintiff's deposition. Additionally, there are numerous medical records, University policies, and human resources documents that must be presented to Plaintiff during her deposition. To find a means to effectively and efficiently present so many documents to Plaintiff via video during her deposition is simply not possible.

Furthermore, anyone who has had to conduct meetings via video conferencing during the past few months of the pandemic can understand the limitations of video conferencing. These include audio and video delays, which cause the parties to talk over and interrupt each other, outages and software malfunctions that kick individuals out of meetings, problems with internet speeds and connectivity, and operator issues when an individual is not sufficiently trained on a particular video platform.

Plaintiff recently had problems with her internet connectivity while attempting to engage in a meeting with Washburn administrators. Without offering any details, Plaintiff claims that she has updated and improved her internet connection to "ensure that a videoconference deposition will be successful." However, defense counsel cannot be sure that Plaintiff's internet service will allow for a successful deposition or that any of the above-mentioned concerns would be alleviated.

Finally, there is no argument that can support the supposition that a deposition taken by video is as good as a deposition taken in person. Although Judge Waxse, in *Shockey*, *supra*, recognized that with the advancement of video capabilities depositions via video are better than a telephone deposition, which was previously the only option to in-person depositions. Yet, any litigator who has taken a deposition by video knows the whole deposition process is more cumbersome and less effective than a deposition taken in person. Despite technological advancements, the general rule that plaintiffs must make themselves available for examination in the district in which they brought suit is still the general rule.

Judge Waxse, citing the Manual for Complex Litigation, noted that the Manual states that "remote depositions are most often used for relatively brief examinations that do not involve numerous documents." *Id.* at 602. Plaintiff's deposition in the present case will not be "brief". The deposition, by agreement of parties and pursuant to the Scheduling Order issued in this case,

Plaintiff's deposition is scheduled for 8 hours. (See Doc. #25, § (2)(l)). Defendant has agreed to accommodate Plaintiff's concerns regarding length of the deposition by breaking the deposition into two, with half being conducted on one day and the second half being conducted the next day. If the Plaintiff's deposition is required to be completed by video, this splitting of the deposition accommodations means that video connections will have to be made on two separate days, thereby giving rise to greater concern regarding internet connectivity and proper software and computer functions.

Additionally, as stated above, the deposition of Plaintiff is going to require the use of hundreds of pages of documents. As one can imagine, over the course of twelve years of employment, during which time email was a common means of communication, a significant record was created. Further, Plaintiff has alleged medical conditions that impacted her employment, and there are years of medical records that have been produced and which will be a necessary part of the Plaintiff's deposition in light of Plaintiff's allegations and legal theories of recovery. Accordingly, Plaintiff's deposition does not fit well with the use of remote depositions, as recognized in the Manual for Complex Litigation relied upon by Judge Waxse.

**b. Defendant has offered reasonable protections to prevent Covid-19 transmission.**

Defendant has offered to conduct the deposition in person in the conference room at Goodell, Stratton, Edmonds & Palmer, L.L.P. ("GSEP"), which is more than adequate to allow social distancing between all participants. The conference room is daily cleaned and wiped down, as well as cleaned after each use. The conference room will be cleaned before each phase of Plaintiff's deposition. In addition, Defendant has no objection to Plaintiff wearing a mask and gloves during the deposition. Other participants may also wear masks and gloves during the deposition. Hand sanitizer is located in the conference room where the deposition will take place

and is available for frequent use by anyone in the deposition. Defendant also agreed to schedule the deposition to occur in two separate sessions over the course of two days in order to accommodate Plaintiff's health conditions and symptoms. Finally, GSEP requires all guests wanting to enter the office to fill out a health questionnaire regarding travel and current health condition before allowing any guest entrance into its office.

The CDC's recommendations for reducing risk for people who are at higher risk for severe illness from Covid-19 are as follows:

- Stay home if possible.
- Wash your hands often.
- Keep space between yourself and others (stay 6 feet away, which is about two arm lengths).

https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html.

Defendant is appropriately allowing for these protections during the deposition.

Additionally, the State of Kansas and Shawnee County in particular are in a phased reopening following the height of the pandemic. Each is currently in the third phase of reopening. As of June 8, 2020, Shawnee County moved to the Governor's Phase 3 of the State's Ad Astra: A Plan to Reopen Kansas (issued May 26, 2020)(see https://admin.ks.gov/coronavirus/reopening/phases). Apparently, the State of Kansas and Shawnee County, with their experienced medical advisors, believe moving to phase 3 of their reopening plans are appropriate under current pandemic conditions, even with a slight up-tick of cases. This suggests that the concerns over the pandemic, generally, are reducing and do not justify the drastic types of measures Plaintiff seeks in her Motion for Protective Order. While Defendant does not intend to argue the serious nature of Covid-19 and its risk to Plaintiff personally, the point is that the situation and related risks surrounding Covid-19 are improving and no longer require the drastic measures originally taken. Defendant has agreed to delay Plaintiff's deposition for

months in light of the pandemic situation and the restrictions imposed by State and local governing bodies. But now it is time to move forward with this case that was filed by Plaintiff, and this includes taking Plaintiff's deposition in as fair a way as is possible while maintaining appropriate protections for Plaintiff and all participants in the deposition. This does not require that the deposition be taken by video.

This is not the first time this Court has had to consider a protective order regarding conducting a deposition via video due to Covid-19 concerns. In *Manley v. Bellendir*, 18-cv-1220-EFM-TJJ, 2020 WL 2766508 (D. Kan. May 28, 2020), Manley requested that his deposition be conducted via video, because he was concerned generally about Covid-19, and because he was concerned with the presence of the Sheriff who was a front line worker and, therefore, more susceptible to contracting the illness. In *Manley*, Judge James recognized the fact that the precautions offered by the Defendant were adequate for the deposition to be safely taken, despite the fact that in May, 2020 the "pandemic was raging in Kansas and worldwide…." Presently, the pandemic is waning, and the State of Kansas and Shawnee County have lifted strict requirements due to the pandemic.

Just like in *Manley*, Plaintiff has not claimed that the precautions Defendant offered are inadequate for protecting her. Admittedly, this case differs from *Manley*, because Plaintiff is at a heightened risk for severe illness due at least to her age and possibly due to the health conditions she claims weakens her immune system. However, Defendant has clearly made appropriate accommodations to protect even a person at a heightened risk. Therefore, Plaintiff has not and cannot show good cause for the entry of the protective order sought, and Plaintiff should be required to attend her deposition in person.

**c.  Requiring Plaintiff to complete her deposition in person does not a place an unreasonable burden on her.**

The disadvantages to Defendant of being required to conduct Plaintiff's deposition by video far outweigh the burdens placed on Plaintiff of traveling a short distance to Topeka and conducting her deposition in person.

Plaintiff cited *Shockey v. Huhtakmaki, Inc.*, 280 F.R.D. 598, 602 (D. Kan. 2012), in support of her argument that a video deposition should be required in this case. On the contrary, this case differs is several important respects, which Judge James already acknowledged in *Manley*:

> In Shockey, the Court specifically noted the "commonplace usage and advances in videoconferencing capabilities," which allowed for a low-cost solution to conducting out-of-state opt-in plaintiffs' depositions. In that case, the court granted the plaintiffs' request for protective order requiring their depositions be taken via video after weighing the relatively high costs of plaintiffs' travel costs to Kansas versus each plaintiff's relatively small claim in the case for unpaid overtime. However, the court also noted that "remote depositions are most often used for relatively brief examinations that do not involve numerous documents." And, both Shockey and Clayton note the traditional general rule that a plaintiff may be required to make him or herself available for examination in the district in which he or she brought the suit.

*Manley*, 2020 WL 2766508, at *2.

Likewise, in this case Plaintiff must make herself available for examination in the district in which she brought the suit. The depositions at issue in the *Shockey* decision involved opt-in plaintiffs who lived in Michigan, New York, Indiana, Arizona, California, and Maine. The proposed deposition was to be conducted in Kansas City. Here, Plaintiff is the *only* plaintiff and lives less than an hour from Topeka. Clearly the concerns the court had in *Shockey* do not apply here.

Moreover, this is not a claim that involves a small amount of claimed damages like in *Shockey*. Although Plaintiff continues to avoid specifying any actual damages she has suffered as a result of her claims in this suit, according to her initial disclosures she is claiming the following:

- compensatory damages for the value of the harm caused by Defendant's ongoing retaliatory treatment, including lost summer teaching opportunities, lost contributions to her TIAA-CREF account, and lost opportunities for advancement

- compensatory damages for emotional distress and ongoing health problems caused by the retaliatory treatment

- compensatory damages for medical bills

- reasonable costs of litigation, including attorney's fees

These claims are financially significant. Unlike in *Shockey*, the cost of travel to Topeka come nowhere close to the amount of damages she claims and certainly will not exceed the amount of her claimed damages.

More importantly, unlike *Shockey* this case involves a significant number of documents, which Defendant will ask Plaintiff about at her deposition. As explained above, the parties so far have exchanged 3,350 pages of documents, many of which Defendant will question Plaintiff about during her deposition.

Plaintiff raised a concern about driving being dangerous for her due to her deteriorating left eye vision. However, as stated previously Defendant offered to conduct the deposition in two separate parts that will allow her to make the drive to Topeka from her home during the day when it is light out. Defendant has clearly bent over backwards to accommodate Plaintiff's stated conditions and concerns, while moving forward with a just, speedy, and inexpensive defense of a case that Plaintiff chose to file. *See* Fed. R Civ. P 1.

The discovery cutoff in this case is September 25, 2020. Plaintiff's attempts to derail discovery are causing the litigation of this case to be unnecessarily prolonged and expensive for Defendant. This Court should require Plaintiff to accept Defendant's abundantly reasonable offer

to depose her in person with social distancing and protective equipment protections in place and deny Plaintiff's Motion for Protective Order.

## II.    The Court should deny Plaintiff's Motion to Quash.

Plaintiff's Motion to Quash Defendant's Subpoena D*uces Tecum* fails, in part, because Plaintiff did not confer with Defendant before filing the current motion and because the document request falls within the broad scope of discovery provided by Federal Rule of Civil Procedure 26(b)(1).

District of Kansas Rule 37.2 requires the parties to confer before filing a protective order or motion to quash. At no time did Plaintiff raise any issues regarding the subpoena *duces tecum* with defense counsel before filing her current Motion to Quash. While there were numerous and significant discussions between counsel regarding Plaintiff's deposition location and the logistics of the deposition, such as breaking the motion into two and conducting it over two separate days, conducting the deposition in a room with a window, etc., Plaintiff's counsel never brought up concerns regarding the *duces tecum* prior to filing the motion to quash. On that basis alone, the Court should deny Plaintiff's request to quash the *duces tecum*.

Defendant issued the subpoena *duces tecum*, because it wants to ensure that Plaintiff has produced all documents that fall within the scope of discovery in this case. As recently as Monday, June 22, 2020 Plaintiff produced additional documents that were previously requested by Defendant back on January 16, 2020. The current subpoena *duces tecum* is limited to those documents that are related to Plaintiff's claims and factual allegations made in her federal complaints and charges of discrimination. It is clear that is "within the scope of discovery." By making the request, Defendant is attempting to ensure that Plaintiff will produce documents

relevant to her claims before her deposition so that Defendant has the opportunity to ask her about the documents.

Yet, in order to address Plaintiff's concerns with the *duces tecum*, Defendant is willing to agree to limit the *duces tecum* request to documents not already produced, and to limit the time period for documents to the dates Plaintiff was employed by Washburn University. This should alleviate all concerns Plaintiff may have regarding the *duces tecum*.

## CONCLUSION

Plaintiff's Motion for Protective Order should be denied. Plaintiff has not shown good cause why she should not appear in person to give her deposition. Defendant's counsel has provided protections and made accommodations for Plaintiff to ensure the safety of not only Plaintiff but all participants at the deposition of Plaintiff. Although Plaintiff may have medical conditions that may pose a risk if exposed to Covid-19, the accommodations and precautions to be taken by Defendant for the deposition alleviate the risk sufficiently that such risk does not outweigh the benefit to Plaintiff appearing in person for her deposition.

It is important in this case that Plaintiff appear in person for her deposition, rather than appear via video, in large part due to the volume of documents that will be used during the deposition. The number of documents to be used in the deposition make taking the deposition via video unmanageable and a video deposition in which so many documents will be used is unreasonable.

In addition to the problems inherent in a video deposition where large volumes of documents will be used, there is ongoing concern in this particular case with both Plaintiff's ability to utilize video technology and the capability of Plaintiff's internet and hardware necessary for a video deposition and Plaintiff's ability to resolve issues that may be encountered with the internet

and/or computer hardware and software in the course of the deposition. These realities directly conflict with Plaintiff's position that she can appear via video for her deposition.

Finally, Plaintiff's motion to quash the Deposition Notice *Duces Tecum* should be denied because Plaintiff's counsel did not confer with Defendant's counsel regarding the *duces tecum* before filing the motion to quash, as required by the Rules of Civil Procedure. Additionally, Defendant has made a compromise in this response that addresses Plaintiff's concerns with the *duces tecum*. Therefore, Plaintiff's motion to quash should be denied.

Respectfully submitted,

*/s/Timothy A. Shultz*
Timothy A. Shultz – #16060
Whitney L. Casement - #25466
GOODELL STRATTON EDMONDS
& PALMER LLP
515 South Kansas Avenue
Topeka, KS 66603-3999
Tel: (785) 233-0593
Fax: (785) 233-8870
tshultz@gseplaw.com
wcasement@gseplaw.com
**ATTORNEYS FOR DEFENDANT
WASHBURN UNIVERSITY OF
TOPEKA**

## CERTIFICATE OF SERVICE

I hereby certify that on this 30th day of June, 2020, a true and correct copy of the above and foregoing was filed with the court via CM/ECF and deposited in the U.S. mail, postage paid, addressed to:

Mark V. Dugan, # 23897
Heather J. Schlozman, # 23869
**Dugan Schlozman LLC**
8826 Santa Fe Drive, Suite 307
Overland Park, KS 66212
Telephone:  (913) 322-3528
Fax: (913) 904-0213
mark@duganschlozman.com
heather@duganschlozman.com

and

Phillip M. Murphy II Ks. Bar # 23770
**LAW OFFICE OF PHILLIP M. MURPHY II LLC**
4717 Grand Ave., Ste. 250
Kansas City, MO 64112
Telephone: (913) 661-2900
phillip@phillipmurphylaw.com
**ATTORNEYS FOR PLAINTIFF**

*/s/ Timothy A. Shultz*
Timothy A. Shultz, #16060