IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| LESLIE J. REYNARD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 19-4012-HLT-TJJ |
| | ) |
| WASHBURN UNIVERSITY | ) |
| OF TOPEKA, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

On July 1, 2020, the Court conducted a telephone hearing on Plaintiff's Motion for Protective Order and to Quash Document Request (ECF No 60). Plaintiff appeared through counsel, Heather J. Schlozman and Mark V. Dugan. Defendant appeared through counsel, Timothy A. Shultz. This order memorializes the Court's oral rulings during the hearing.

### I.  Relevant Background

Plaintiff filed the present motion on June 23, 2020, seeking a protective order requiring Plaintiff's deposition be taken remotely by video, and an order that Defendant's request for documents in the deposition notice be quashed. The Court previously conducted a phone status conference regarding Plaintiff's deposition on May 19, 2020.[1] Plaintiff argued then, as she does now, that her age (73 years old),[2] multiple underlying health conditions,[3] and her husband's age (71 years old) and stage 4 cancer[4] make appearing in person for her deposition dangerous

---

[1] *See* ECF No. 57.

[2] ECF No. 60-1 at 2, ¶ 1.

[3] *Id.* at ¶ 2 (Plaintiff's conditions include chronic-acute Epstein Barr virus, fibromyalgia, probable myalgic encephalomyelitis, complex migraine/probable reversible cerebral vascular syndrome, erosive esophagitis, and deteriorating vision in left eye).

[4] *Id.* at ¶ 3–4.

because of the ongoing COVID-19 pandemic. Defendant did not then, and does not now, dispute the health problems asserted by Plaintiff and her husband. However, Defendant opposed taking Plaintiff's deposition via videoconference, stressing the importance of taking the deposition of a *plaintiff* who is asserting a significant damage claim, in person. Defendant argued it would have adequate safeguards in place to protect Plaintiff during her in person deposition.[5] Defendant also argued taking the deposition remotely would put Defendant at a disadvantage because of its inability to observe Plaintiff in-person, and because a video deposition in this situation would be impossible given the large number of deposition exhibits that will be utilized in Plaintiff's deposition.[6] Additionally, Defendant expressed concern that Plaintiff does not have sufficient internet capability to appear by video, noting that Plaintiff was unable to participate in a video meeting she previously had with Defendant due to her unstable internet connection.[7] Plaintiff states now that she has resolved her internet difficulties and is "confident" she "could be available for a videoconference deposition."[8]

During the May 19, 2020 hearing, the Court discussed with counsel various factors it would weigh in determining whether, and if so under what conditions, Plaintiff's remote deposition might be required. The Court extended the discovery deadline to allow Plaintiff's deposition to be delayed and instructed the parties to continue to confer and attempt to resolve their dispute. The Court also instructed that if the parties were unable to resolve the dispute, Defendant should file a notice of deposition, and Plaintiff could file a motion for protective order.

---

[5] *See* ECF No. 57 at 1–2.

[6] *Id.* at 1.

[7] *Id.*

[8] ECF No. 60-1 at 3, ¶ 7.

On June 15, 2020, Defendant noticed Plaintiff's deposition for July 7 and 8, 2020 at defense counsel's office in Topeka, Kansas.[9] Plaintiff filed the present motion on June 23, 2020. The Court abbreviated the briefing schedule and set a phone hearing on July 1, 2020, in order to have a ruling in advance of Plaintiff's deposition. Defendant filed its response on June 30, 2020, and Plaintiff filed her reply shortly before the hearing on July 1, 2020, pursuant to the Court's order setting the hearing.[10] Based upon the briefing and arguments of counsel at the hearing, the Court granted in part and denied in part Plaintiff's motion. The Court ordered that Plaintiff's deposition shall proceed remotely and that Plaintiff shall produce all documents responsive to Defendant's discovery requests to which she did not object prior to her deposition, for all of the reasons explained during the hearing and set out in detail below.

## II. Legal Standard

Plaintiff brings this motion pursuant to Fed. R. Civ. P. 26(c)(1) and 30(b)(4). Rule 26(c)(1) states, in relevant part:

> "A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending—or as an alternative on matters relating to a deposition, in the court for the district where the deposition will be taken. … The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense …"

---

[9] ECF No. 58. The parties previously agreed to certain aspects of the deposition, including that it will be limited to seven hours, and it will be split into two sessions. *See* ECF No. 57 at 2. There is a disagreement now as to whether the deposition is limited to seven hours or eight hours. *See* ECF No. 63 at 4–5 ("The deposition, by agreement of parties and pursuant to the Scheduling Order issued in this case … is scheduled for 8 hours.") and ECF No. 64 at 2 n.2 ("The parties' more recent discussions, however, have addressed a seven-hour deposition, and the Court's May 26, 2020 Third Amended Scheduling Order notes that the deposition 'will be limited to seven hours.'"). The original Scheduling Order in this case does reflect that Plaintiff's deposition will be limited to eight hours (ECF No. 25 at 8). But, as Plaintiff indicates in her reply, and as counsel represented to the Court during the May 19, 2020 telephone status conference, the parties have since agreed to limit Plaintiff's deposition to seven hours. Therefore, Plaintiff's deposition shall be limited to seven hours split into two days.

[10] *See* ECF No. 61.

3

Rule 30(b)(4) states:

> "The parties may stipulate—or the court may on motion order—that a deposition be taken by telephone or other remote means."

The party seeking a protective order has the burden to show good cause for it.[11] This Court has previously noted that "Rule 30(b)(4) is permissive, not mandatory, and the Court must exercise its discretion in determining whether the moving party has shown good cause for issuance of a protective order requiring that a deposition be taken remotely."[12] To establish good cause, a party must make "a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements."[13]

The Court "has broad discretion to decide when a protective order is appropriate and what degree of protection is required."[14] The Supreme Court has recognized that trial courts are "in the best position to weigh the fairly competing needs and interests of the parties affected by discovery. The unique character of the discovery process requires that the trial court have substantial latitude to fashion protective orders."[15]

### III. Analysis

#### A. Whether Plaintiff has shown good cause for her deposition to be taken remotely

The Court considers first whether Plaintiff has shown good cause for a remote deposition. In support of her motion requesting a protective order requiring her deposition be taken

---

[11] *Univ. of Kan. Ctr. for Research, Inc. v. United States*, No. CIVA 08-2565-JAR-DJW, 2010 WL 571824, at *3 (D. Kan. Feb. 12, 2010) (citing *Reed v. Bennett*, 193 F.R.D. 689, 691 (D. Kan. 2000)).

[12] *Manley v. Bellendir*, No. 18-CV-1220-EFM-TJJ, 2020 WL 2766508, at *2 (D. Kan. May 28, 2020).

[13] *Univ. of Kan. Ctr. for Research, Inc.*, 2010 WL 571824, at *3 (quoting *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102 n.16 (1981)).

[14] *Shockey v. Huhtamaki, Inc.*, 280 F.R.D. 598, 600 (D. Kan. 2012) (internal quotations omitted).

[15] *Id.* (quoting *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36, (1984)).

remotely, Plaintiff argues several factors put her at a higher risk for complications, including death, should she contract COVID-19.

The Court finds Plaintiff has met her burden to show good cause for a protective order requiring her deposition be taken remotely for several reasons. Plaintiff's age and multiple health conditions indisputably put her at a higher risk of serious complications if she were to contract the virus. Plaintiff also has legitimate concerns of exposing her husband, who is also high risk because he is 71 years of age and suffering from stage 4 cancer, to the virus. The Court has previously taken and continues to take judicial notice of the COVID-19 pandemic and its rapid spread throughout Kansas, the United States, and the world.[16]

Defendant argued in its response filed June 30, 2020 that "the situation and related risks surrounding [COVID]-19 are improving and no longer require the drastic measures originally taken,"[17] relying primarily on the fact that Kansas has entered Phase 3 of its reopening plan. Defendant argues this "suggests that the concerns over the pandemic, generally, are reducing and do not justify the drastic types of measures Plaintiff seeks in her Motion for Protective Order."[18] During the July 1, 2020 phone hearing, Defendant also provided numbers for hospitalizations at a Topeka, Kansas hospital indicating cases had mostly held steady for the past few days.

The Court, however, takes judicial notice of Executive Order No. 20-52, issued by Kansas Governor Laura Kelly on July 2, 2020, requiring masks or other face coverings in public. The Executive Order notes that "after a steady trend of decreasing metrics, recent weeks have seen the numbers of COVID-19 cases, hospitalizations, and deaths spike in Kansas and across the nation" and "this worrying trend of increased COVID-19 spread is a danger to the health and

---

[16] *See, e.g.*, *Manley v. Bellendir*, No. 18-CV-1220-EFM-TJJ, 2020 WL 2766508, at *2 (D. Kan. May 28, 2020).
[17] ECF No. 63 at 6.
[18] *Id.*

safety of every Kansan and also presents a serious threat to reopening and reviving the Kansas economy."[19] Indeed, on June 29, 2020, Kansas recorded 14,443 cases with 270 deaths.[20] Shawnee County, which includes Topeka, recorded 630 cases.[21] But, just two days later, on July 1, 2020, Kansas recorded 14,990 cases with 272 deaths, and Shawnee County recorded 669 cases.[22] Thus, in two days the overall number of cases increased by 547 cases, and by 39 cases in Shawnee County. The Court is therefore not persuaded by Defendant's argument that the risks surrounding COVID-19 are improving so as to no longer require the protections Plaintiff requests.

Even if the Court were to accept Defendant's position, the fact that Kansas has moved into Phase 3 of its reopening plan does not mean witnesses no longer face health risks. Judge Valerie Caproni in the Southern District of New York recently addressed this argument:

> "Whether to reopen the economy and to loosen the related public health restrictions is a complex policy decision that is not guided solely by health and safety considerations. The Court does not purport to judge the wisdom of state and local governments' reopening decisions. What remains clear is that the unique health risks posed by COVID-19 are as present today as they were in May: it is a potentially fatal illness with the ability to spread through asymptomatic or pre-symptomatic carriers, with no approved cure, treatment, or vaccine, and unlike in other countries, new cases here are plateauing (or, in some areas, rising) rather than plummeting."[23]

---

[19] Executive Order No. 20-52, Requiring masks or other face coverings in public, https://governor.kansas.gov/wp-content/uploads/2020/07/20200702093130003.pdf.

[20] *See* COVID-19 Cases in Kansas Daily Case Summary & Historical Data, https://www.coronavirus.kdheks.gov/DocumentCenter/View/1125/Historical---July-1?bidId=. Kansas updates this information every Monday, Wednesday, and Friday. *See also* https://www.coronavirus.kdheks.gov/160/COVID-19-in-Kansas.

[21] *Id.*

[22] *Id.*

[23] *Joffe v. King & Spalding LLP*, No. 17-CV-3392 (VEC), 2020 WL 3453452, at *7 (S.D.N.Y. June 24, 2020).

Plaintiff's age and health risks, along with her husband's, support a protective order requiring Plaintiff's deposition be taken remotely in this case. Other courts have also ordered remote depositions because of concerns regarding COVID-19.[24]

The Court is also not persuaded that Defendant has provided adequate safety precautions for taking Plaintiff's deposition in person. Defendant states only that it "has no objection to Plaintiff wearing a mask and gloves during the deposition" and that "[o]ther participants *may* also wear masks and gloves."[25] Defendant does not offer that anyone outside of the conference room will be wearing a mask, making it possible that Plaintiff would encounter people who are not wearing a mask on her way to or into the building, at the front desk, in the waiting area before the deposition begins, and/or any time she were to be in a public space such as the restroom.[26] Additionally, Defendant generally states the conference room "is more than adequate to allow social distancing between all participants"[27] but provides no specifics to ensure adequate social distancing, such as the size of the conference room or the number of people who will be present.

---

[24] *See, e.g.*, *In re Broiler Chicken Antitrust Litig.*, No. 1:16-CV-08637, 2020 WL 3469166, at *5 (N.D. Ill. June 25, 2020) (noting "[c]ourts are beginning to recognize that a 'new normal' has taken hold throughout the country in the wake of the COVID-19 pandemic that may necessitate the taking of remote depositions unless litigation is going to come to an indefinite halt until there is a cure or a vaccine for COVID-19."); *Learning Res., Inc. v. Playgo Toys Enterprises Ltd.*, No. 19-CV-00660, 2020 WL 3250723, at *2–3 (N.D. Ill. June 16, 2020) (finding "[t]he general concern over the risks posed by COVID-19 are heightened" where lead counsel and members of his family were in a high-risk category. One of Plaintiff's counsel also represented to the Court during the July 1, 2020 hearing that her daughter is in a high-risk category).

[25] ECF No. 63 at 5 (emphasis added).

[26] Importantly, though Governor Kelly's executive order requires everyone to wear a mask while in public spaces, including workspaces, Shawnee County (where counsel for Defendant offices and Defendant proposes to take Plaintiff's in-person deposition) has rejected the order and does not impose such a requirement. *See* "Shawnee Co. Commissioners reject Governor's mask order, develop less severe standards," WIBW-TV (July 2, 2020), https://www.wibw.com/2020/07/02/shawnee-co-commissioners-reject-governors-mask-order-keep-current-mask-requirements-in-place/.

[27] ECF No. 63 at 5.

This is a material difference between this case and *Manley v. Bellendir*,[28] which Defendant cites to support its position. In *Manley*, prior to the Court's involvement, the parties had already agreed to conduct the plaintiff's deposition in person. But when the plaintiff's counsel learned the defendant sheriff would be present, the plaintiff filed a motion for a protective order to prevent the sheriff from attending in person because he was at a higher risk of exposure to the virus given his status as a first responder.[29] The defendant opposed taking the plaintiff's deposition remotely because the plaintiff's alleged history of substance abuse prevented him from staying focused.[30] In support of his position, the defendant offered to provide all people present at the deposition with masks, gloves, and any other necessary personal protective equipment.[31] Additionally, the sheriff had tested negative for COVID-19 two days before the scheduled deposition.[32] In reaching its decision, the Court specifically noted that the plaintiff did "not contend he ha[d] any medical condition that would place him at heightened risk of contracting the virus, or that the precautions [d]efendant describe[d] for the taking of Plaintiff's deposition would be inadequate to protect Plaintiff," and that the plaintiff's request was "based merely upon very general concerns regarding COVID-19."[33] And, despite the lack of any specific health concerns for the plaintiff in *Manley*, the Court still ordered that the sheriff not be physically present to alleviate his general concerns.[34]

---

[28] No. 18-CV-1220-EFM-TJJ, 2020 WL 2766508 (D. Kan. May 28, 2020).

[29] *Id.* at *1.

[30] *Id.*

[31] *Id.* at *3.

[32] *Id.*

[33] *Id.*

[34] *Id.*

Unlike the plaintiff in *Manley*, Plaintiff in this case has outlined multiple specific health concerns for herself and her husband, for whom she is the primary caregiver, regarding COVID-19. Again, Plaintiff is 73 years old and suffers from multiple chronic health conditions. Plaintiff's husband is 71 years old and is undergoing treatment for stage 4 cancer. These factors place Plaintiff and her husband at a higher risk for serious and potentially fatal complications if they were to contract the virus. The CDC recommends, as Defendant points out in its response, that people who are at a higher risk for complications and severe illness from COVID-19 "*stay home if possible*."[35] Requiring that Plaintiff's deposition be taken by video conference will allow Plaintiff to stay home and avoid the risks associated with traveling to the offices of Defendant's counsel for her deposition.

Defendant has not made an adequate showing that sufficient protections would be in place if Plaintiff's deposition were to occur in person or made any particularized showing for why Plaintiff's deposition needs to be taken in person. Defendant does not propose that everyone present be required to wear a mask and offers no guarantee that everyone in the conference room would be at least six feet apart.[36] For all the reasons discussed above, the Court finds that Plaintiff has overwhelmingly shown good cause in this case for her deposition to be taken remotely.

---

[35] ECF No. 63 at 6 (emphasis added) (citing CDC, Coronavirus Disease 2019 (COVID-19), Older Adults, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html (noting that "[a]s you get older, your risk for severe illness from COVID-19 increases," and "[t]here are also other factors that can increase your risk for severe illness, such as having underlying medical conditions.")).

[36] Even if Defendant did show everyone would be six feet apart, that might not be sufficient given all the other factors at issue here. *See Joffe v. King & Spalding LLP*, No. 17-CV-3392 (VEC), 2020 WL 3453452, at *7 (S.D.N.Y. June 24, 2020) (finding proposed social distancing would not guarantee a safe deposition environment because "CDC guidelines do not suggest that the coronavirus magically decomposes or hits an invisible wall after traveling six feet in the air. Rather, the CDC has made clear that a distance of six feet is the minimum requirement, that greater separation reduces risk of transmission further, and that risk of infection increases with prolonged indoor interaction" and noting "the oft-repeated six-feet rule may not be sufficient in a high-risk environment, such as an indoor setting with prolonged exposure.").

### B. Whether the burden on Defendant outweighs the good cause Plaintiff has shown

Finding that Plaintiff has shown good cause for a remote deposition, the burden shifts to Defendant to show it would be unduly burdened by a remote deposition sufficient to outweigh the good cause shown by Plaintiff. Defendant opposes taking Plaintiff's deposition remotely for two main reasons: a remote deposition would place Defendant at an "extreme disadvantage"[37] because of the large number of documents defense counsel plans to present to Plaintiff during the deposition, and Plaintiff has had internet issues previously such that a remote deposition cannot be guaranteed to go forth properly. Defendant argues that a remote deposition would be "impossible" because of the large number of documents defense counsel intends to use during the deposition.[38] Defendant's counsel stated he has a large binder filled with exhibits that will be used during the deposition. Although the Court is sympathetic to Defendant's concerns, the Court finds they do not outweigh Plaintiff's legitimate health concerns.

With technological advancements in recent years, video depositions can be used very effectively in many settings[39] and have become much more common as a result of the pandemic. In this district, Judge Gale has noted in light of the COVID-19 pandemic that "[v]ideo or teleconference depositions and preparation are the 'new normal' and most likely will be for some time."[40] Other courts have considered this issue as well and found that "a witness can be well-prepared to give a deposition, even a deposition that may involve a large number of documents and a relevant time period of many years, without being in the same room with her or his

---

[37] ECF No. 63 at 3.

[38] *Id.* at 2.

[39] *See generally Shockey v. Huhtamaki, Inc.*, 280 F.R.D. 598 (D. Kan. 2012) (finding good cause for video depositions).

[40] *Wilkens v. ValueHealth, LLC*, No. 19-1193-EFM-KGG, 2020 WL 2496001, at *2 (D. Kan. May 14, 2020).

counsel."[41] Further, the witness and counsel could "have the same universe of documents in front of them, either in hard or electronic copy," which "are identifiable by a Bates number or other unique identifier," such that the deposition "should proceed without too much trouble even if the process takes a bit longer than in person."[42]

Despite the difficulties with using documents during a remote deposition, the Court is confident counsel in this case are very capable and can make the deposition work effectively with exhibits. For example, defense counsel could duplicate the binder filled with exhibits to provide Plaintiff in advance of the deposition so counsel and Plaintiff are able to refer to the same thing throughout the deposition. Although there are challenges, the Court finds the health risks in this case outweigh the practical problems of making effective use of exhibits.

And again, as discussed thoroughly above, the Court is not convinced that the protections outlined by Defendant would be fully effective. As suggested by the CDC, Plaintiff will be safer staying at home for her deposition. Although Defendant understandably has some concerns about having Plaintiff's deposition go smoothly, the unique health risks in Plaintiff's medical conditions and in the COVID-19 pandemic world we are living in now outweigh any of those concerns.

The Court also notes that Defendant previously argued conducting Plaintiff's deposition remotely would put it at a disadvantage because it would not be able to observe Plaintiff.[43] Although Defendant does not include that argument in its response to the present motion, the Court notes that if the deposition were in person, Plaintiff would wear a mask covering most of her face, which would eliminate many of the advantages of observing her at an in-person

---

[41] *In re Broiler Chicken Antitrust Litig.*, No. 1:16-CV-08637, 2020 WL 3469166, at *3 (N.D. Ill. June 25, 2020).
[42] *Id.*
[43] *See* ECF No. 57 at 1.

deposition. Alternatively, if she were to be deposed remotely from her home, she would not need to wear a mask, giving Defendant the opportunity to observe her.[44] Although there is the risk of technological challenges, including image quality issues resulting in a less-than-clear picture, generally video capabilities have improved dramatically and have become more commonplace, even since the Court noted the reliability of video technology in *Shockey v. v. Huhtamaki, Inc.*[45] in 2012.[46] Thus, in this case the chance that Defendant will be able to observe Plaintiff is much higher if the deposition is conducted remotely rather than in person.

Finally, Plaintiff has indicated through counsel that she has resolved her internet issues. Plaintiff's counsel stated that Plaintiff has taken steps to improve the internet signal in her home, including installing a Mesh WiFi, which strengthens the internet signal throughout her house. Plaintiff's counsel also confirmed that Plaintiff is capable of operating Zoom, and that Plaintiff would be willing to participate in a test Zoom session with counsel before the deposition to ensure there are no issues. If Plaintiff continues to have internet connectivity issues or is unable to use Zoom (or whatever video conferencing service the parties agree on) properly such that it is impossible to conduct the deposition by remote means, Defendant may file another motion or a motion for reconsideration after conferring in good faith. However, the Court warned the parties that it is construing that possibility very narrowly and expects that counsel will make every effort to go forward with completing the deposition remotely.

During the conference, Plaintiff's counsel requested that the deposition not take place on July 7 and 8 as noticed because her husband is scheduled for chemotherapy those days.

---

[44] *See Shockey v. Huhtamaki, Inc.*, 280 F.R.D. 598 at 602 (finding video conferencing "addresses Defendant's objection that the deponent's nonverbal responses and demeanor cannot be observed.").

[45] *Id.*

[46] *Manley v. Bellendir*, No. 18-CV-1220-EFM-TJJ, 2020 WL 2766508, at *2 (D. Kan. May 28, 2020).

Defendant had no objection to rescheduling the deposition. The parties may confer and agree to other dates, but Plaintiff's deposition must be completed by the end of July.

For all the reasons discussed above, Defendant has failed to show any undue burden on it that outweighs Plaintiff's good cause for conducting her deposition remotely. Therefore, the Court will issue a protective order requiring that Plaintiff's deposition be taken remotely by videoconferencing.

### C. Document requests

Plaintiff also seeks to quash the *duces tecum* request in Defendant's deposition notice, arguing the documents Defendant seeks exceed the scope of permissible discovery. The notice states, in part:

> "The deponent is requested to bring and produce at the deposition any and all documents relating to Washburn University of Topeka and deponent's employment with Washburn University of Topeka, and any and all records relating to her claims and factual allegations …"[47]

In its response, Defendant stated it was "willing to agree to limit the *duces tecum* request to documents not already produced, and to limit the time period for documents to the dates Plaintiff was employed by Washburn University."[48] Plaintiff stated in her reply that "[w]ith that limitation, Plaintiff's motion to quash is moot" and that she "has responded fully to Defendant's document requests, and is withholding no documents."[49]

During the July 1, 2020 hearing, the Court confirmed with the parties that Plaintiff has in fact produced all responsive documents. The Court ruled that Plaintiff is required to provide all documents responsive to Defendant's discovery requests to which she did not object prior to her

---

[47] ECF No. 58.

[48] ECF No. 63 at 11.

[49] ECF No. 64 at 5–6.

13

deposition. Therefore, Plaintiff's motion to quash Defendant's document request is granted insofar as the request shall be limited to documents not already produced and limited to the time period for the dates Plaintiff was employed by Washburn University, and is otherwise denied.

**IT IS THEREFORE ORDERED BY THE COURT** that Plaintiff's Motion for Protective Order and to Quash Document Request (ECF No 60) is granted in part and denied in part as outlined above. Plaintiff's deposition shall proceed remotely. Plaintiff shall produce all documents responsive to Defendant's discovery requests to which she did not object prior to her deposition.

**IT IS SO ORDERED.**

Dated July 7, 2020, at Kansas City, Kansas.

*Teresa J. James*
Teresa J. James
U. S. Magistrate Judge